**DISTRICT COURT OF THE VIRGIN ISLANDS**
**DIVISION OF ST. CROIX**

_____
                                       )
**HERNAN NAVARRO,**                    )
                                       )
              **Petitioner,**          )
                                       )
       **v.**                          )        **Civil Action No. 2011-0112**
                                       )        **Criminal Action No. 1999-0016-3**
**UNITED STATES OF AMERICA**           )
                                       )
              **Respondent.**          )
_____)

**Appearances:**
**Hernan Navarro,** *Pro Se*
Oakwood, VA

**Alphonso G. Andrews, Esq.,**
St. Croix, U.S.V.I.
      *For the Respondent*

**MEMORANDUM OPINION AND ORDER**
**ADOPTING REPORT AND RECOMMENDATION**

THIS MATTER comes before the Court for consideration of the Report and
Recommendation ("R&R") of United States Magistrate Judge George W. Cannon, Jr. dated
August 31, 2017 (Dkt. No. 317), in which Judge Cannon recommended that the Motion under 28
U.S.C. § 2255 (Dkt. No. 252)[1] and the Motion under 28 U.S.C. § 2255 to Vacate, Set Aside or
Correct Sentence (Dkt. No. 254), filed by Petitioner Hernan Navarro ("Navarro"), be dismissed as
time-barred. Navarro filed Objections to the Report and Recommendation. (Dkt. No. 329). Having
considered Navarro's Objections and the entire matter, the Court will adopt Judge Cannon's R&R
and dismiss Navarro's § 2255 Motions as time-barred.

---

[1]  All docket numbers referenced herein are from the criminal case, *United States v. Navarro*,
1999-cv-0016.

# I.    BACKGROUND

In August 1999, following a jury trial, Navarro was convicted of Burglary First Degree, Robbery First Degree, Carjacking, First Degree Murder, Assault First Degree, Unlawful Possession of a Firearm, and Threatening a Witness. (Dkt. No. 13). He was sentenced in May 2000 to life without parole on the murder charge and additional time on the other counts. His conviction and sentence were affirmed by the Third Circuit Court of Appeals in October 2001, *United States v. Lopez*, 271 F.3d 472 (3d Cir. 2001) (Dkt. No. 43), and his application for writ of certiorari was denied by the United States Supreme Court on March 25, 2002. *Navarro v. United States*, 535 U.S. 962 (2002). Over nine years later, Navarro filed a "Memorandum for Motion under 28 U.S.C. § 2255" dated November 22, 2011 (Dkt. No. 252), and a Motion to Vacate under 28 U.S.C. § 2255 dated December 13, 2011. (Dkt. No. 254).

In May 2012, this Court entered an Order, *sua sponte* (the "May 2012 Order") in which it noted that Navarro's habeas motions appeared to be time-barred. (Dkt. No. 264). The Court ordered Navarro to explain why his § 2255 Motions should not be dismissed as untimely or why he may be entitled to equitable tolling, as he had filed his § 2255 Motions over eight years after the one-year statute of limitations governing such motions had elapsed. *Id.* In a series of filings in response to the May 2012 Order, Navarro asserted that: (1) he was actually innocent; (2) he did not know § 2255 motions existed; (3) his transcripts were taken from him; (4) he was not given library time; and (5) he received ineffective assistance of counsel because counsel informed him that the only recourse he had after the Supreme Court denied his petition for writ of certiorari was to seek a pardon. (Dkt. Nos. 267, 269, 280, 291, 295).[2]

---

[2] Magistrate Judge Cannon considered these five filings in assessing Navarro's equitable tolling arguments, notwithstanding that Dkt. Nos. 291 and 295 were submitted well beyond the timeframe contemplated in the May 2012 Order allowing Navarro thirty days to provide reasons why equitable tolling should be applied in this matter. *See* Dkt. No. 317 at 9 n.5.

In the R&R, the Magistrate Judge recommended that Navarro's § 2255 Motions be dismissed as untimely because the filings exceeded the one-year statute of limitations imposed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), codified at 28 U.S.C. § 2255(f). (Dkt. No. 317). The R&R addressed various arguments proffered by Navarro in his filings in which he sought equitable tolling of the statute of limitations.

With regard to Navarro's actual innocence claim based on newly-discovered evidence, the Magistrate Judge observed that Navarro had described the contents of an alleged affidavit of a co-Defendant who stated that he (the co-Defendant) was the one who pulled the trigger in the underlying crimes and killed the victim. However, because Navarro and others had been charged with the murder while "aiding and abetting each other," and Navarro had not alleged or presented any evidence that he was not present during the crimes or that he did not aid and abet his co-Defendants, the Magistrate Judge concluded that Navarro had failed to persuade the Court that "no reasonable juror would have convicted" him and therefore this exception to the AEDPA statute of limitations did not apply. *Id.* at 5-7 (quoting *Douglas v. Beard*, 2002 WL 550474, at *5 (E.D. Pa. Apr. 12, 2002), *aff'd sub nom. Douglas v. Horn*, 359 F.3d 257 (3d Cir. 2004)).

The R&R further recommended that the Court find that Navarro's alleged lack of legal knowledge and his limited or no access to the law library and legal materials did not constitute extraordinary circumstances, because equitable tolling based on those reasons had been rejected in case law, and Navarro did not explain why these restrictions had prevented him from filing his § 2255 Motions within the limitations period or why the Motions were filed over eight years after the statute of limitations had expired. *Id.* at 8-9. With regard to Navarro's ineffective assistance of counsel claim, which was related to his argument that he lacked knowledge that habeas relief was available, the R&R cited case law providing that lack of legal knowledge does not warrant equitable tolling and attorney error does not normally constitute extraordinary circumstances

unless it was so outrageous or incompetent that it was rendered extraordinary, and that was not the case here. *Id.* at 7-8, 11-12.

Finally, the Magistrate Judge recommended that the Court find that Navarro did not exercise reasonable diligence during the limitations period to warrant equitable tolling, as he did not provide dates or specific timeframes regarding his lack of legal materials. *Id.* at 12. The R&R noted that although Navarro claimed his trial transcripts were taken from him, the record did not show any efforts by Navarro to obtain another copy of his trial transcripts during the limitations period,[3] or any efforts by Navarro during the limitations period or immediately thereafter to seek information about his right to file a § 2255 Motion. *Id.* at 12-13. It was also recommended that, even if Navarro's attorney's statement that Navarro had exhausted his remedies constituted an exceptional circumstance, Navarro made no showing that this allegedly incorrect advice prevented him from timely filing a petition or that he exercised reasonable diligence to file following that alleged attorney malfeasance. *Id.* at 13-14. According to the R&R, the period of inactivity from 2002 through 2011 indicated that Navarro "lacked the requisite diligence for purposes of equitable tolling." *Id*. at 14 (quoting *Lyles v. Lane*, 2017 WL 1981347, at *5 (E.D. Pa. Feb. 23, 2017)). The Magistrate Judge stated that the reasons Navarro proffered for the late filings did not satisfy the requirements for equitable tolling because it was a remedy that could only be invoked sparingly, and Navarro had not borne his burden of establishing that he had been pursuing his rights diligently and that extraordinary circumstances had stood in his way that prevented a timely filing. *Id.* at 4.

Objections to the R&R were due within fourteen days after Navarro was served with a copy, pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b). The docket reflects that a copy of the R&R was mailed to Navarro on August 31, 2017, the day the R&R was issued. (Dkt. No.

---

[3] The R&R pointed out that the record contains a letter from Navarro to the Court dated November 7, 2008 (Dkt. No. 240) in which Navarro asked for his "whole file of discovery." (Dkt. No. 317 at 12, n.6).

318). The certified mail return receipt indicates that the R&R was received at Navarro's correctional facility on September 5, 2017. (Dkt. No. 320). Navarro's Objections to the R&R were dated September 11 and 12, 2017, and postmarked on September 21, 2017. (Dkt. Nos. 329, 329-1).[4] The Court finds that Navarro's Objections were timely filed.[5]

In his thirty-eight page Objections, Navarro often reiterates and expands upon arguments he made in his various filings in response to the May 2012 Order directing him to address the timeliness/equitable tolling issues. The Court finds that Navarro raised certain specific objections to the R&R: (1) with regard to his ineffective assistance of counsel claim, he takes issue with the R&R's citation to *Cristin v. Wolfe*, 168 F. App'x 508 (3d Cir. 2006), and attempts to distinguish the facts in that case from this case; and (2) he asserts that the R&R focused on limited access to the law library, when he had *no* access to the library, and that constituted an extraordinary circumstance. (Dkt No. 329).

Navarro raised an actual innocence claim based on an alleged affidavit from his co-Defendant, which was addressed in the R&R. Navarro also raised for the first time in his

---

[4] Although Navarro's Objections were postmarked on September 21, 2017 (Dkt. No. 329-1), they were not delivered to the Court until November 7, 2017 due to the delay in the delivery of mail following Hurricanes Irma and Maria. The Court finds the Objections were timely filed under the prison mailbox rule. *See Moody v. Conroy,* 680 F. App'x 140, 144 (3d Cir. 2017) ("Under the prison mailbox rule, . . . a pleading is deemed filed at the time a prisoner executes it and delivers it to prison authorities for mailing. *See Houston v. Lack,* 487 U.S. 266, 276, 108 S.Ct. 2379, 101 L.Ed.2d 245 (1988); *Pabon v. Sup't S.C.I. Mahanoy,* 654 F.3d 385, 391 n.8 (3d Cir. 2011).").

[5] On June 18, 2018, Navarro filed a "Response by Navarro, Attachment to Judge Cannons Report and Recommendations" ("Response") in the civil case (1:11-cv-0012) associated with the criminal case in which Navarro's habeas motions and September 21, 2017 Objections were filed. (Dkt. No. 28 in 11-cv-0112). This Response is an untimely second Objection to the R&R. Navarro has already availed himself of an opportunity to object to the R&R, which the Court has considered. The Rules do not allow a second opportunity to file additional Objections, and Navarro does not offer any reason why the Court should consider this untimely filing. The Court therefore declines to consider it.

Objections an actual innocence claim with regard to a defense fingerprint expert, but noted that that argument was not being asserted for purposes of equitable tolling.

## II.    DISCUSSION

### A.  Applicable Legal Standards

"Article III requires *de novo* review of a magistrate judge's R&R where a party timely objects." *Nara v. Frank*, 488 F.3d 187, 194 (3d Cir. 2007) (citing *Peretz v. United States*, 501 U.S. 923 (1991)); 28 U.S.C. § 636(b)(1)(C) (requiring *de novo* review of those portions of the magistrate judge's findings to which objections are made). The district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). To the extent a party fails to make specific objections to portions of the R&R, the Court reviews the R&R under the "plain error" standard. *Roman v. Overmyer,* 2017 WL 517813, at *1 n.1 (E.D. Pa. Feb. 8, 2017). Under this standard of review, "an R&R should only be rejected if the magistrate judge commits an error that was '(1) clear or obvious, (2) affect[ed] 'substantial rights,' and (3) seriously affected the fairness, integrity or public reputation of judicial proceedings.'" *Id.* (quoting *Leyva v. Williams*, 504 F.3d 357, 363 (3d Cir. 2007)).

A court may also decline to perform a *de novo* review

> if a party's objections to the R&R merely reiterate issues already presented to the magistrate judge. *See Batchelor v. Rose Tree Media Sch. Dist.*, 2013 WL 1776076, at *4 (E.D. Pa. Mar. 28, 2013), *aff'd,* 759 F.3d 266 (3d Cir. 2014); *Goney v. Clark,* 749 F.2d 6, 6-7 (3d Cir. 1984) (noting a *de novo* review of objections is not appropriate when such review would undermine efficiency of magistrate system); *Morgan v. Astrue,* 2009 WL 3541001, at *3 (E.D. Pa. Oct. 30, 2009) (explaining an objecting party must do more than "simply rehash [ ] arguments already raised to the magistrate judge" to warrant *de novo* review). . . . [A]ddress[ing] objections previously raised before a magistrate judge . . . would "defeat any benefit of judicial efficiency gained by the report and recommendation process." *Palmer v. Astrue,* 2010 WL 1254266, at *2 (E.D. Pa. Mar. 31, 2010) (quoting *Morgan,* 2009 WL 3541001, at *4).

*Joseph v. Beard*, 2015 WL 1443970 *4 (E.D. Pa. Mar. 27, 2015).

In this case, the Court will conduct a *de novo* review of Navarro's specific objections—the ineffective assistance of counsel claims related to the R&R's citation to *Cristin v. Wolfe*, 168 F. App'x 508 (3d Cir. 2006), and his claim that he had *no* access to the law library, rather than limited access to the library. The Court will also review *de novo* his actual innocence/ineffective assistance of counsel claim. The remaining issues, for which arguments were raised in his § 2255 Motions and subsequent filings, and simply repeated in his Objections, will be reviewed under the plain error standard.

Under the AEDPA, a defendant must file a § 2255 motion no more than one year after the latest of four specified events, including "the date on which the judgment of conviction becomes final[.]" *United States v. Lloyd,* 188 F.3d 184, 186-87 (3d Cir. 1999) (quoting 28 U.S.C. § 2255(f)(1)).[6] The Third Circuit has interpreted that language to mean that a judgment of conviction becomes final "within the meaning of § 2255 on the later of (1) the date on which the Supreme Court affirms the conviction and sentence on the merits or denies the defendant's timely filed petition for certiorari, or (2) the date on which the defendant's time for filing a timely petition for certiorari review expires." *Kapral v. United States,* 166 F3d 565, 577 (3d Cir. 1999). In this case, Navarro's one-year statute of limitations expired on March 25, 2003—one year from the date on which the Supreme Court denied his application for writ of certiorari. *Navarro v. United States*, 535 U.S. 962 (2002). Navarro did not file his § 2255 Motions until November and December 2011, over eight years after the statute of limitations had expired.

---

[6] The other three events that commence the running of the limitations period, which are not relevant here, are: "(2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action; (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence." 28 U.S.C. § 2255(f)(2), (3), (4).

The one-year limitations period is "subject to equitable tolling in appropriate cases." *Holland v. Florida*, 560 U.S. 631, 645 (2010). "Generally, a litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstances stood in his way." *Ross v. Varano*, 712 F.3d 784, 798 (3d Cir. 2013) (citations and internal brackets omitted). In determining whether equitable tolling should apply, the unique circumstances of each petitioner seeking relief under § 2255 must be taken into account. *United States v. Thomas*, 713 F.3d 165, 174 (3d Cir. 2013). Equitable tolling should be used "sparingly." *Id.* If a habeas motion is time-barred under AEDPA, and equitable tolling does not apply, a court must dismiss the habeas motion. *Pace v. Vaughn*, 71 F. App'x 127, 129 (3d Cir. 2003).

## B. Ineffective Assistance of Counsel

Navarro claims that his attorney's advice that the "Supreme Court was the last step and there was nothing else [Navarro] could do," and that he should seek a pardon from the Governor, constituted ineffective assistance of counsel. (Dkt. No. 317 at 11; Dkt. No. 329 at 8-10, 31-32). In rejecting this ineffective assistance argument, the R&R recommended that the Court find that the attorney's purported advice did "not demonstrate a level of incompetence necessary to establish an extraordinary circumstance." (Dkt. No. 317 at 11). The R&R cited *Cristin* in support of his conclusion. In *Cristin*, a panel of the Third Circuit affirmed the ruling of a district court that an untimely habeas petition was not subject to equitable tolling even where counsel "never informed [Mrs. Cristin] that he was not filing a petition for allowance of appeal in the Pennsylvania Supreme Court, never explained to her that she could file a petition for a writ of habeas corpus in federal court, and never explained to her the deadlines for such a filing." *Id.* (quoting *Cristin*, 168 F. App'x at 511). The R&R added that Navarro never showed how counsel's response "'actually prevented

[him] from timely filing a § 2255 Motion.'" *Id.* at 11 (quoting *Wright v. United States*, 2017 WL 1137461, at *3 (D. Del. Mar. 27, 2017)).

In his Objections, Navarro responds that *Cristin* is distinguishable from his case because, unlike Mrs. Cristin, he affirmatively asked his counsel a question—what was his "next step" after the Supreme Court denied his petition for writ of certiorari—whereas Cristin's counsel failed to inform her that he was not pursuing post-conviction relief, without being asked a direct question. (Dkt. No. 329 at 8, 31). Navarro reasserts that his counsel misled him by saying that a pardon was his next step, which led him on a "wild goose chase," which in turn "contributed" to his not filing his habeas motion on time. *Id.* at 31-32. Navarro also states that he submitted a pardon application—which "could [have] been" a § 2255 motion—in 2006 or 2007. *Id.* at 32. Navarro's point is that, because of the incorrect advice purportedly given by his counsel, he pursued another avenue of relief—a pardon—not knowing about § 2255 relief or its one-year limitations period. This, according to Navarro, constitutes extraordinary circumstances.

The fact that Mrs. Cristin never queried her counsel about post-conviction relief, in contrast to Navarro asking his counsel what the "next step" would be, and receiving what he characterizes as an "ineffective" answer (Dkt. No. 329 at 9) which "misled[ ]" him, *id.* at 32, does not bring Navarro's situation into the realm of extraordinary circumstances to support equitable tolling. Ample case law demonstrates the correctness of the Magistrate Judge's recommendation. In order to justify equitable tolling, attorney misconduct must rise "beyond garden variety neglect," *Seitzinger v. Reading Hosp. & Med. Ctr*, 165 F.3d 236, 241 (3d Cir. 1999), and be "egregious." *Schleuter v. Varner*, 384 F.3d 69, 77 (3d Cir. 2004). Extraordinary circumstances have been found only where: "(a) the respondent has actively misled the plaintiff, (b) the petitioner has in some extraordinary way been prevented from asserting his rights, (c) the petitioner has timely asserted his rights mistakenly in the wrong forum, or (d) the court itself has misled a party regarding the

steps that the party needs to take to preserve a claim." *Wilson v. Sweeney*, 2014 WL 714920, at *6 (D.N.J. Feb. 24, 2014) (citing *Brinson v. Vaughn*, 398 F.3d 225, 230 (3d Cir. 2005)). The Third Circuit found egregious attorney misconduct in the first category where "'a diligent client persistently questioned the lawyer as to whether he had filed the complaint in time, and [the attorney] affirmatively misrepresented to her that he had.'" *Cristin*, 168 F. App'x at 511 (quoting *Seitzinger*, 165 F.3d at 237-38; *see also Ajamu-Osagboro v. Patrick*, 620 F. Supp. 2d 701, 717 (E.D. Pa. 2009) ("Petitioner claims that the attorney who filed his first PCRA petition abandoned him when it came time to file an appeal, forcing petitioner to proceed *pro se*, and that this extraordinary circumstance justifies equitable tolling. To the contrary, petitioner does not allege, let alone establish, serious attorney misconduct, such as *lying* or persistent neglect, that typically warrants equitable tolling. *See Schlueter*, 384 F.3d at 76 (distinguishing affirmative misrepresentation from failure to keep promise).") (emphasis added).

The fact that Navarro purportedly asked his attorney about next steps, and she told him that there was nothing else she could do, or that Navarro should seek a pardon and that a "pardon was his best shot," does not constitute the kind of affirmative misrepresentation described in *Seitzinger*, where an attorney actually lies in stating that he filed a timely complaint but did not. *Cf. Gutierrez v. Gonzales*, 125 F. App'x 406, 410 (3d Cir. 2005) (district court found attorney made affirmative misrepresentation to habeas petitioner that an appeal had already been filed, and petitioner relied on that statement regarding post-conviction relief). Rather it falls into the general category of attorney error which, in a non-capital case, "is not a sufficient basis for equitable tolling of AEDPA's one-year period of limitation." *Schlueter*, 384 F.3d at 76. As the Third Circuit held in *Fahy v. Horn*, 240 F.3d 239 (3d Cir. 2001), "attorney error, miscalculation, inadequate research, or other mistakes have not been found to rise to the 'extraordinary' circumstances required for equitable tolling." *Id.* at 243. Whether the misinformation allegedly conveyed by the attorney

constituted an error, or was advice based on inadequate research or other mistake, Navarro "does not allege, let alone establish, serious attorney misconduct, such as lying or persistent neglect, that typically warrants equitable tolling." *Ajamu-Osagboro,* 620 F. Supp. 2d at 717. In fact, Navarro does not allege that his attorney affirmatively lied to him by telling him to seek a pardon; rather, he regards her response as "incompetent" and states that she was "ineffective." (Dkt. No. 329 at 32). *See Johnson v. Hendricks*, 314 F.3d 159, 162-63 (3d Cir. 2002) (rejecting petitioner's argument that he was prevented in an extraordinary way from asserting his rights based on counsel's incorrect advice concerning when habeas statute of limitations runs, and citing similar holdings in other circuits); *Fluellen v. Shannon*, 2008 WL 1730579, at *5 (E.D. Pa. Apr. 10, 2008) ("Ineffective assistance of counsel has not generally been considered an extraordinary circumstance where the ineffectiveness was due to counsel's negligence or mistake.") (citing cases).

Moreover, Navarro has offered "nothing more than a 'conclusory and unsupported statement regarding [his] counsel's alleged failure,'" which courts have found to be insufficient to support a claim for equitable tolling. *Ajamu-Osagboro*, 620 F. Supp. 2d at 717 (quoting *Harrison v. Ryan*, 2008 WL 4377791, at *4 (D. Del. Sept. 23, 2008)). Other than his bald statement, supported by no emails, letters, or any other kind of proof that he proffered the question of "next steps" to his counsel in the first instance, and his counsel's response, his *ipse dixit* is insufficient for a court to find equitable tolling. *See Scott v. Ricci*, 2008 WL 2684376, at *6 (D. N.J. June 30, 2008) ("Petitioner has presented no evidence that assigned counsel actively misled him by not informing him of the AEDPA's statute of limitations.").

Further, even if Navarro had established that his attorney's purported advice constituted extraordinary circumstances—which he has not—"a finding that attorney malfeasance is an extraordinary circumstance, without more, is not sufficient to warrant equitable tolling."

*Schleuter,* 384 F.3d at 77. As the R&R noted, the petitioner must also show that he acted with reasonable diligence to justify the application of equitable tolling. (Dkt. No. 317 at 11). *See Seitzinger*, 165 F.3d at 237-38 (finding that equitable tolling appropriate where a *diligent* client *persistently* questioned his attorney) (emphasis added); *see also Brown*, 322 F.3d at 773 (opining that, even where extraordinary circumstances do exist, "[i]f the person seeking equitable tolling has not exercised reasonable diligence in attempting to file after the extraordinary circumstances began, the link of causation between the extraordinary circumstances and the failure to file is broken, and the extraordinary circumstances therefore did not prevent timely filing.").

Navarro did not act with such diligence. He does not assert, for example, that he "persistently" or repeatedly questioned his attorney. Rather, his Objections indicate that he questioned his attorney *once* about what post-conviction recourse he had. (Dkt. No. 329 at 9, 10). He refers to calling his attorney once a week, but makes no reference to asking her, even a second time, if there was any other type of relief he could pursue or even about how to go about pursuing a pardon. *Id.* at 22. Navarro inquires rhetorically if asking his attorney about the next step was due diligence. *Id.* at 9, 10. The answer is no, as case law is clear that reasonable diligence requires a petitioner to do more than make a single—albeit important—inquiry to qualify for equitable tolling. *Seitzinger*, 165 F.3d at 237-38; *Stromberg v. Varano*, 2012 WL 2849266, at *4 (E.D. Pa. July 11, 2012) ("[P]etitioner has failed to offer any proof in support of his claims that he was misled by his attorney," finding declaration by his uncle did not establish that attorney "repeatedly assured Petitioner that he was working on his case," or establish that "petitioner's failure to actively pursue post-conviction remedies for eight years was a result of counsel's repeated untruthful assurances and does not support Petitioner's claim that his own eight years of inactivity should be excused by the Court.").

Even if the Court were to consider Navarro's attempt to be granted a pardon as a stand-in for the kind of post-conviction relief afforded by a § 2255 habeas motion, Navarro did not pursue that relief with reasonable diligence. He submitted a request for a pardon in 2006 or 2007, four or five years after his attorney allegedly advised him, in 2002, to submit it. (Dkt. No. 329 at 32). This length of time does not constitute reasonable diligence in seeking relief, particularly since Navarro gives no reason, other than not knowing how to go about submitting a pardon, for filing so late. This reason is not sufficient for a court to find equitable tolling. *See Hendricks v. Johnson*, 62 F. Supp. 3d 406, 411 (D. Del. 2014) ("It is well-settled that a prisoner's ignorance of the law and lack of legal expertise does not excuse his failure to make a prompt and timely filing.") (citing cases).

In sum, Navarro has not satisfied either of the prerequisites necessary for equitable tolling. Asking his attorney once for advice on post-conviction relief, or submitting a pardon request four or five years after his attorney's alleged incorrect advice, does not constitute reasonable diligence. Nor does counsel's alleged incorrect advice constitute the kind of attorney error or incompetence that rises to the level of extraordinary circumstances. Thus, Navarro's ineffective assistance of counsel claim does not warrant equitable tolling.

### C. No Law Library Time

Navarro's second objection focuses on the R&R's citation to case law stating that "a prisoner's limited access to a law library is a routine aspect of prison life, and is generally insufficient to trigger equitable tolling absent a causal relationship between the limited library access and the prisoner's late filing." (Dkt. No. 317 at 8, quoting *Faines v. United States,* 808 F. Supp. 2d 708, 712 (D. Del. 2011) and other cases referring to whether courts grant equitable tolling based on limited access to a law library). Navarro emphasizes that he had *no* access to the law library during the one year limitations period and this is not, therefore, a "routine" aspect of prison life. (Dkt. No. 329 at 13, 19). He explains that his lack of access to the law library stemmed from

being on lockdown resulting from a "murder of another inmate that Golden Grove Administration said that we [he and other co-Defendants in the underlying criminal case] did." *Id*. at 13; *see id*. at 14. Navarro adds that after this lockdown period, he was also locked down because he "got into a fight with some corrections officers over the fact that [his] rights to the library [were] being violated." (Dkt. No. 295 at 2).

Numerous circuit court panels have found that a petitioner is not entitled to equitable tolling based on lockdown status. *See Harris v. Marquis*, 2017 WL 4404631, at *2 (6th Cir. Sept. 28, 2017) (petitioner not entitled to equitable tolling based on his asserted inability to access prison law library while on lockdown status, and citing *Hall v. Warden, Lebanon Corr. Inst*., 662 F.3d 745, 751 (6th Cir. 2011)); *Phares v. Jones*, 470 F. App'x 718, 719 (10th Cir. 2012) ("The mere fact of a prison lockdown . . . does not qualify as extraordinary absent some additional showing that the circumstances prevented [the petitioner] from timely filing his habeas petition.") (citing cases); *Dodd v. United States*, 365 F.3d 1273, 1283-(11th Cir. 2004) ("Lockdowns and periods in which a prisoner is separated from his legal papers are not 'extraordinary circumstances' in which equitable tolling is appropriate."). This result has also been reflected in district court decisions in the Third Circuit. *See, e.g., United States v. Mathis*, 2017 WL 3782988, at *2 (W.D. Pa. Aug. 31, 2017) ("Routine aspects of prison life such as lockdowns, [and] lack of access to legal resources do not constitute extraordinary circumstances for purposes of equitable tolling.") (internal quotation marks omitted) (citing cases); *Gadsen v. United States*, 2015 WL 9259402, at *6 (W.D. Pa. Dec. 18, 2015) ("Standing alone, however, a prison lockdown rarely constitutes an extraordinary circumstance warranting equitable tolling") (citing cases).

Although Navarro cites lack of access to the law library as grounds for equitable tolling, he fails to establish the necessary causal nexus. Nowhere in Navarro's thirty-eight page Objections does he explain how access to the law library—which he admits that he had at various points

during and after the one-year limitations period—provided him with the requisite knowledge about habeas motions which caused him to file those motions, albeit untimely. Nor does he explain how his lack of access to the law library actually prevented him from timely filing his habeas motion. That is fatal to his equitable tolling argument. In *Hester v. New Jersey*, 2017 WL 4391736 (D.N.J. Sept. 29, 2017), the district court rejected a petitioner's equitable tolling argument based on denial of access to the prison law library during the entire period of incarceration. The court opined: "[H]e does not explain why this lack of access to the prison law library *prevented* him from filing his [post-conviction relief application] promptly." *Id.* at *2. The court also noted that the petitioner attached grievance forms that supposedly provided proof of denial to the law library, but found that none of them explained his lateness in filing. *Id.* Here, Navarro provides no proof that he actually requested law library time and was denied. In other words, Navarro has not shown any proof of the facts he relies on for extraordinary circumstances, much less has he demonstrated in any way a causal relationship between the alleged extraordinary circumstances and his late filing. *Brown*, 332 F.3d at 773.

Navarro's lack of access to the law library is akin to being ignorant of the law, as he wanted to go to the law library to "obtain law books and writing materials" to pursue whatever relief he might have available. (Dkt. No. 329 at 11). In *Williamson v. Giroux*, 2013 WL 4774468 (E.D. Pa. Sept. 6, 2013), the petitioner argued that the untimeliness of her petition should be excused because she was "not knowledgeable" as to what procedures were available to challenge her conviction. *Id.* at *4. The court held that the petitioner's "alleged lack of knowledge regarding the procedures available to challenge her conviction is unavailing for purposes of equitable tolling. The Supreme Court has unequivocally held that, even for *pro se* litigants, ignorance of the law is never an excuse for failing to comply with legal requirements. *See United States v. Johnson,* 544 U.S. 295, 311 (2005) ("[W]e have never accepted *pro se* representation alone or procedural ignorance as an

excuse for prolonged inattention when a statute's clear policy calls for promptness.")); *see also Payne v. Valenzuela*, 2016 WL 304294, at *1 (C.D. Cal. Jan. 25, 2016) (finding limited access to law library, in combination with petitioner's lack of legal sophistication and limited ability to read and write, does not constitute extraordinary circumstances) (citing, *inter alia, Fisher v. Johnson*, 174 F.3d 710, 714 (5th Cir. 1999) (ignorance of the limitation period did not warrant equitable tolling); *Singletary v. Newland*, 2001 WL 1220738, at *2 (N.D. Cal. Sept. 28, 2001) ("A misunderstanding of the complexities of federal habeas relief is not considered an extraordinary circumstance or external factor for purposes of avoiding an otherwise valid dismissal, as complete illiteracy does not even provide a sufficient basis for equitable tolling."); *Ekenberg v. Lewis*, 1999 WL 13720, at *2 (N.D. Cal. Jan. 12, 1999) ("Ignorance of the law and lack of legal assistance do not constitute such extraordinary circumstances.")).

Moreover, Navarro fails to describe, with specificity and definitively, how his period of lockdown corresponds to the eight-year delay in filing his petition. In his Objections, he provides varying dates for lockdowns when he was without access to the law library: during the one-year AEDPA statute of limitations (Dkt. No. 329 at 13, 19), and from 2001 through 2004, *id.* at 19, 24. He also claims that he was on lockdown "until about July, Aug 2002," *id.* at 15, and that he was released from lockdown "around Oct/Nov. 2002 but I could not leave my unit." *Id.* at 16.[7] At another point in his Objections, Navarro states that he could visit the library as long as he was escorted, *id.*, and also describes an unescorted trip he took to the law library "about the beginning of 2003"—during the statute of limitations period—even though he was allegedly not supposed to leave his unit. *Id.* at 17-18.

---

[7] This comment is not otherwise explained.

The moving target of timeframes for Navarro's alleged lack of access to the law library, together with the period or periods when Navarro allegedly had access to the library when escorted, fails to account for the eight year period of delay, and does not constitute extraordinary circumstances. *See Faines*, 808 F. Supp. 2d at 712.[8] In sum, "[t]he circumstances in [this] case simply do not warrant the application of equitable tolling after such [a] lengthy period[] of time had elapsed following his conviction before he sought. . . federal relief." *Schlueter*, 384 F.3d at 77.

### D. Actual Innocence

#### 1. The Co-Defendant's Alleged Affidavit

The Court will review Navarro's actual innocence claim related to the alleged affidavit from his co-Defendant, *see* Dkt. Nos. 252 and 254, under a plain error standard, as he made no specific objection to the Magistrate Judge's recommendation that this claim did not suffice to toll the statute of limitations period. (Dkt. No. 317 at 5-7). *See Batchelor,* 2013 WL 1776076, at *4, *aff'd,* 759 F.3d 266 (3d Cir. 2014); *Joseph*, 2015 WL 1443970 at *4. The Court further notes that the existence of this alleged affidavit is based on Navarro's assertion that one of his co-Defendants, Delroy Josiah, told him in July 2011 that he (Josiah) had made an affidavit stating that he had killed the victim. That affidavit was allegedly given to Attorney Lydia Moolenaar. (Dkt. No. 252 at 1; Dkt. No. 254 at 5, 13). Notwithstanding the lack of certainty as to the existence of this evidence, the Court will proceed with the analysis.

---

[8] Navarro makes a vague and conclusory statement that if the Magistrate Judge had access to his prison and medical records, "he could see for himself why I couldn't make the ONE YEAR limitation deadline." (Dkt. No. 329 at 2, 19-20). According to Navarro, this information would apparently verify the time period during which he was on lockdown and would show why he could not timely file his habeas motion. He has also filed several discovery requests seeking that information. *See, e.g.*, Dkt. Nos. 292, 293, 294, 302, 323. However, because the Court has found that his lockdown and lack of access to the law library do not constitute extraordinary circumstances and therefore do not warrant equitable tolling, his requests for discovery are moot and will be denied in a separate Order.

In order for an actual innocence claim to warrant equitable tolling, the petitioner must "'demonstrate that, in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him.'" *Bruce v. Warden Lewisburg USP,* 868 F.3d 170, 184 (3d Cir. 2017) (quoting *Bousley v. United States*, 523 U.S. 614, 623 (1998) (internal quotation marks omitted)).

> Because 'actual innocence' means factual innocence, not mere legal insufficiency,' the Government 'is not limited to the existing record to rebut any showing that [the] petitioner may make.' *Bousley*, 523 U.S. at 623-24, 118 S.Ct. 1604. A habeas court is therefore 'not bound by the rules of admissibility that would govern at trial,' but must instead "make its determination 'in light of all the evidence, including that alleged to have been illegally admitted (but with due regard to any unreliability of it) and evidence tenably claimed to have been wrongly excluded or to have become available only after the trial.' *Schlup*, 513 U.S. at 327-28, 115 S.Ct. 851 (quoting Henry J. Friendly, *Is Innocence Irrelevant? Collateral Attack on Criminal Judgments*, 38 U. Chi. L. Rev. 142, 160 (1970)). With this broader array of evidence in view, the district court does not exercise its 'independent judgement as to whether reasonable doubt exists'; rather, the actual innocence standard 'requires the district court to make a probabilistic determination about what reasonable, properly instructed jurors would do. *Id.* at 329, 115 S.Ct. 851. And it must be presumed, moreover, that a reasonable juror "would consider fairly all of the evidence presented" and 'conscientiously obey the instructions of the trial court requiring proof beyond a reasonable doubt.' *Id.*

*Id.* The movant must also "'present new, reliable evidence.'" *Reeves v. Fayette SCI*, __ F.3d __, 2018 WL 3521339, at *3 (3d Cir. July 23, 2018) (quoting *Houck v. Stickman*, 625 F.3d 88, 93 (3d Cir. 2010)). As part of the reliability assessment, "the court 'may consider how the timing of [the petitioner's] submission and the likely credibility of the [witnesses] bear on the probable reliability of that evidence,' as well as the circumstances surrounding the evidence and any supporting corroboration." *Id.* (quoting *House v. Bell*, 547 U.S. 418, 537 (2006)).

The Court finds that the Magistrate Judge did not err in concluding that, even if an actual innocence exception to the statute of limitations exists, Navarro failed to establish that such an exception applies in this case. (Dkt. No. 317 at 5-6). Navarro referred in his Motions to an alleged affidavit from a co-Defendant who admitted to being the person who pulled the trigger and killed the victim as establishing his actual innocence claim. Even such a claim would not render it sufficient to warrant equitable tolling here because Navarro was charged with liability under

*Pinkerton v. United States*, 328 U.S. 640 (1946), where "the criminal act of one conspirator in furtherance of the conspiracy is 'attributable to the other[ ] [conspirators] for the purpose of holding them responsible for the substantive offense,'" *Lopez,* 271 F.3d at 480 (quoting *Pinkerton*, 328 U.S. at 647), and because defendants were charged as aiders and abetters, *id.* at 481-82. Thus, the Magistrate Judge did not plainly err when he found that because Navarro did not provide any evidence of not being present during the crimes or evidence that he did not aid and abet his co-Defendants, he therefore failed to establish that he was factually innocent. *Bruce,* 868 F.3d at 184. Navarro failed to "demonstrate that, in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him." *Id.* (internal quotation marks omitted). Accordingly, the Court concludes that the Magistrate Judge did not commit plain error in concluding that Navarro's actual innocence claim based on the alleged affidavit of his co-Defendant was an insufficient basis to warrant equitable tolling of the limitations period.[9]

### 2. Testimony of Defense Fingerprint Expert

Navarro claimed, in his habeas motion, that his counsel was ineffective for failing to consult an expert, conduct research, or request copies of his fingerprint that the Government's fingerprint expert testified was found on a knife at the murder scene. He posited that if his attorney had acceded to his request and hired a defense fingerprint expert, "we could have [gotten] a different verdict." (Dkt. No. 254 at 6; *see also* Dkt. No. 252 at 5; Dkt. No. 280 at 6). He asserted that "this is the only evidence against me." (Dkt. No. 254 at 6). He made similar claims in his Objections: if his attorney had "listened to [him]" and hired a fingerprint expert, and if the expert had determined it was not his fingerprint, and if his co-Defendant had claimed at trial—consistent with the text of the co-Defendant's alleged post-trial affidavit— that he had killed the victim,

---

[9] This Court would reach the same conclusion under a *de novo* standard of review.

Navarro would likely have been found not guilty. *Id.* However, in his Objections, he characterizes this argument as an actual innocence claim based on ineffective assistance of counsel. Navarro emphasizes that this actual innocence claim "has nothing to do with the one year limitations period," has "nothing to do with [ ] equitable tolling," and also has nothing to do with the "new discovered evidence claim." (Dkt. No. 329. at 4, 5). He describes this as a "stand alone" actual innocence claim that he is raising "so that I can preserve it for later [i]f I get the chance to present my § 2255 motion to the court." *Id.* at 3.

The R&R did not address this issue in the first instance because it was presented on the merits as an ineffective assistance of counsel claim in his Motion and various filings, not as an argument to warrant equitable tolling. In his Objections, Navarro raises this argument for the first time as an actual innocence claim based on ineffective assistance of counsel. He explicitly asserts, however, that this argument is not made to support his equitable tolling request, but so that it can be preserved for the Court to address it on the merits if he can establish that equitable tolling is warranted.

In *Hunte v. Sup't Benner Twp SCI,* 2017 WL 3752935 (3d Cir. June 21, 2017), the Third Circuit denied an application for a certificate of appealability in part because "jurists of reason also would not debate whether the District Court was correct to dismiss new claims that [petitioner] raised in his objections to the Magistrate Judge's report and recommendation." *Id.* at *1. In a similar vein, district courts in the Third Circuit have declined to consider new arguments raised for the first time in objections to a R&R. *See, e.g., Clark v. Fisher*, 2011 WL 6000795 at *2 (W.D. Pa. Nov. 30, 2011) (finding claims not raised in the habeas petition were not properly before the court and citing numerous circuit and district court cases); *cf. Prater v. Pennsylvania*, 2013 WL 461702, at *1 (E.D. Pa. Feb. 7, 2013) (adopting R&R in part because petitioner's objection to R&R raised new claims and arguments not contained in his habeas petition). This Court, therefore,

declines to address this new claim of actual innocence raised for the first time in Navarro's Objections, and also because Navarro himself emphasizes that it is a claim that he seeks to have addressed on the merits, and not in the context of equitably tolling the AEDPA statute of limitations.

Nonetheless, even if the Court were to consider this actual innocence argument as a means of equitably tolling the statute of limitations due to the alleged ineffectiveness of counsel, the Court would reject it as woefully insufficient, under either a *de novo* or plain error standard. In *Reeves v. Fayette SCI*, __ F.3d __, 2018 WL 3521339 (3d Cir. July 25, 2018), the Third Circuit recently expanded the definition of what constitutes "new" evidence for purposes of an actual innocence claim. Previously, the appellate court viewed new evidence as evidence that "was not available at the time of trial and could not have been discovered earlier through the exercise of due diligence." *Houck v. Stickman*, 625 F.3d 88, 93-94 (3d Cir. 2010). The Court in *Reeves* held that "[w]hen a petitioner asserts ineffective assistance of counsel based on counsel's failure to discover *or present* to the fact-finder the very exculpatory evidence that demonstrates his actual innocence, such evidence constitutes new evidence for purposes of the *Schlup* actual innocence gateway." *Reeves*, 2018 WL 3521339, at *6 (emphasis added). The Court explained that this approach

> (1) ensures that reliable, compelling evidence of innocence will not be rejected on the basis that it should have been discovered or presented by counsel when the very constitutional violation asserted is that counsel failed to take appropriate actions with respect to that specific evidence; and (2) is consistent with the Supreme Court's command that a petitioner will pass through the actual innocence gateway only in rare and extraordinary cases.

*Id.*

Here, however, there is no exculpatory evidence, either newly-discovered or which could have been presented by counsel, that would demonstrate Navarro's actual innocence. The "new evidence" that Navarro asks the Court to consider in his Motion to Vacate and his Objections is what a defense fingerprint expert—who did not testify—*might* have testified to. Counsel did not

fail to present reliable, compelling, and specific evidence by a defense fingerprint expert that would have established Navarro's innocence because there was no such evidence. Navarro has provided only his raw speculation that *if* his counsel had hired a fingerprint expert, and *if*—contrary to the testimony of the Government's expert—the expert had found that it was not his fingerprint on the knife, and *if* his co-Defendant had come forward with information consistent with his affidavit, the results of his trial would have been different. This unsubstantiated speculation is clearly insufficient to establish an actual innocence claim to support equitable tolling. *See O'Boyle v. Ortiz,* 242 F. App'x 529, 530-31 (10th Cir. 2007) ("Most of [petitioner's] 'new' evidence is really speculation about what *might* be shown *if* certain tests were performed on physical evidence in the case. Such speculation is insufficient to meet the heavy burden" of *Schlup*) (citing *Arthur v. Allen*, 459 F.3d 1310, 1310-11 (11th Cir. 2006)); *Yuzary v. Samuels*, 2007 WL 2332301, at *3 (D.N.J. Aug. 10, 2007) ("Petitioner's claim of actual innocence is not based on any new, reliable evidence unavailable at trial. His speculation as to the facts supporting his claim does not meet the extraordinary test of actual innocence[.]"); *Davis v. Wynder*, 2007 WL 2407104, at *2 (E.D. Pa. Aug. 22, 2007) (finding that because petitioner's claim of actual innocence was based on his speculation as to what forensic evidence might have existed, he could not establish an entitlement to equitable tolling).

Because this actual innocence argument, such as it is, is not based on any actual evidence but rather on speculation and a string of hypotheticals, even if the Court were to reach the issue, it would reject it. Navarro failed to "'demonstrate that, in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him.'" *Bruce,* 868 F.3d at 184. As a result, this actual innocence claim based on ineffective assistance of counsel would also fail, and would not toll the statute of limitations.

### E. General Arguments

In his Objections, Navarro provides more information concerning the general arguments he made in his filings in response to the May 2012 Order. He claims that asking for law books, law help, and writing materials, writing the courts during the limitations period, and complaining about his transcripts being taken from him constituted extraordinary circumstances and showed a diligent pursuit of his rights. *Id*. at 33-34, 36-37.[10] In so arguing, Navarro simply repeats arguments already presented to the Magistrate Judge in his various filings, or improperly raises associated arguments not previously raised and that the Magistrate Judge, therefore, did not consider. Accordingly, the Court will review these issues for plain error. *Joseph*, 2015 WL 1443970 at *4 (citing cases). The Magistrate Judge properly rejected all of these arguments as not exhibiting extraordinary circumstances or reasonable diligence, based on established case law. *See Ross,* 712 F.3d at 798; *Thomas*, 713 F.3d at 174; *Pace*, 71 F. App'x at 129.

These conclusions manifest no plain error.

### F. Conclusion

Based on the above analysis, the Court finds that, on *de novo* review of those portions of the R&R to which specific objections have been made—ineffective assistance of counsel and lack of access to the law library—or where this Court addresses Navarro's actual innocence contention for the first time, equitable tolling is not warranted. For those portions of the R&R to which no

---

[10] Navarro's arguments as set forth in his Objections regarding his requests for law books, law help, and writing material, are much more fulsome than he made in passing in his various Motions and subsequent documents. For example, in his Motions, he states that his confinement due to being locked down resulted in "inadequate access to legal research materials and assistance." (Dkt. No. 291 at 3). This contention relates to his claim of lack of access to the law library, which was addressed *de novo* earlier in this Opinion. He also asserted that he had written to the courts "after 3/25/12 because I was trying to get a pardon application and new transcripts." (Dkt. No. 329 at 36). He does not link this statement to any grounds for equitable tolling. Moreover, his delay in attempting to obtain his transcripts—nine years after the limitation period had expired—does not show reasonable diligence and undermines his implicit contention that, but for his failure to have access to his transcripts, he would have timely filed his Motion.

specific objections have been made, or which reiterated the arguments made in the habeas motions, the Court finds that the Magistrate Judge made no plain error in his analysis. Thus, the Court will accept the R&R, and dismiss Navarro's habeas motions as time-barred.

### G. Certificate of Appealability

The R&R did not refer to whether a Certificate of Appealability ("COA") should issue in this case. "Before a circuit court may rule on an appeal from a district court, a state prisoner seeking federal *habeas corpus* relief must obtain a COA as a jurisdictional pre-requisite." *Pabon v. Mahanoy*, 654 F.3d 385, 392 (3d Cir. 2011) (internal quotation marks omitted). Pursuant to 28 U.S.C. § 2253(a), a final order from a § 2255 proceeding shall be subject to review, on appeal, by the court of appeals for the circuit in which the proceeding is held. However, unless a judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from the final order in a § 2255 proceeding. 28 U.S.C. § 2253(c)(1)(B). In *Barnes v. United States*, 2018 WL 1905642 (D. Del. Apr. 23, 2018), the district court described the standard for issuing a COA:

> A certificate of appealability is appropriate only if the movant "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The movant must "demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

*Id.* at *5.

The Court is dismissing Navarro's § 2255 Motions after determining that his claims are meritless. The Court is persuaded that reasonable jurists would not find this assessment debatable or wrong. Accordingly, the Court will not issue a COA.

## ORDER

For the reasons stated above, it is hereby,

**ORDERED** that the Report and Recommendation issued by Magistrate Judge George W. Cannon (Dkt. No. 317) is **ADOPTED** for the reasons more fully stated in the R&R and, upon this Court's review, for the reasons set forth above; and it is further

**ORDERED** that Navarro's Motions to Vacate, Set Aside or Correct Sentence (Dkt. Nos. 252, 254) are **DISMISSED** as time-barred; and it is further

**ORDERED** that the Court **DECLINES** to issue a certificate of appealability for failure to satisfy the standard set forth in 28 U.S.C. § 2253(c)(2); and it is further

**ORDERED** that the Clerk of Court shall mark the civil case (2011-cv-0112) **CLOSED**; and it is further

**ORDERED** that the Clerk of Court shall provide a copy of this Order to Petitioner Hernan Navarro by certified mail, return receipt requested.

**SO ORDERED**.

Date: July 27, 2018

_____/s/_____
WILMA A. LEWIS
Chief Judge